1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

Marianne Bruhn-Popik,

Plaintiff,

12

13

v.

14

Richard V. Spencer, Secretary of the
United States Navy,

15

Defendant.

16

Case No.: 17-cv-0488-AJB-MDD

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT (Doc. No. 48)**

17      When a settlement agreement is unambiguous and entered into voluntarily,

18   knowingly, and informed, the terms must stand. Here, the Navy asserts Plaintiff's lawsuit

19   violates the terms of her agreement. However, the Court finds the key word in the

20   agreement—institute—does not apply to her current claim. Rather, her current claim is a

21   continuation of her administrative claim against the Navy. Thus, the Court **DENIES** the

22   Navy's summary judgment motion. (Doc. No. 48.)

23                          **I.      BACKGROUND**

24      Plaintiff brings a disparate treatment sex discrimination case against the United

25   States Navy for alleged sexual harassment by her superior and others beginning in 2010

26   while she was on tour in Japan. (Doc. No. 1 ¶ 19.) After reporting several incidents to her

27   Commander, Cmdr. Zeda, he presented a "sexist attitude and sex-based stereotyped

28   thinking about Plaintiff" and called her "the town slut." (*Id.* ¶ 25.) However, Cmdr. Zeda

1

failed to investigate her sexual harassment claims. Plaintiff complained to several other people regarding her sexual harassment claims—but still to no avail. (*Id.* ¶¶ 35, 36.) Plaintiff alleges her tour in Japan was curtailed based on her reports and her alleged "after hours" conduct, which was formed based on "sex-based stereotypes." (*Id.* ¶ 39.) For these actions, Plaintiff brings both sex discrimination and sexual harassment claims against the Navy. (*Id.* ¶¶ 42–45.)

Plaintiff satisfied her administrative requirements when she brought these claims before the EEOC in 2011. (*Id.* ¶¶ 7–8.) In 2016, the EEOC granted the Navy's motion for summary judgment and issued a Final Order, allowing Plaintiff to bring her claims within 90 days. (*Id.* ¶¶ 9–12.) Plaintiff timely filed her complaint with this Court.

In Defendant's motion, Defendant adds the following additional facts. After Plaintiff returned from Japan in 2012, she initiated a formal complaint against her supervisor, Susan Wilson, on issues not involving her tour in Japan. (Doc. No. 48-1 at 3.) These incidents arose during her employment in Albany, Georgia. (Doc. No. 54 at 18.) The parties resolved that complaint when Plaintiff signed a settlement agreement with the Navy—including a provision stating she would not bring any other actions or claims against the Navy. (Doc. No. 48-1 at 3.) At this point, Plaintiff's Japan-related claims were pending with the EEOC.

## II. LEGAL STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving

2

party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

Defendant alleges Plaintiff's settlement agreement bars the claims in her complaint. (Doc. No. 48-1 at 5.) The settlement agreement was entered into on October 25, 2012. (Doc. No. 48-2 at 34.) The provision containing the release of Plaintiff's future claims, Section I.B.3, states Plaintiff:

> Will not institute any other actions, charges, complaints, grievances, class actions, appeals, or inquiries against the Secretary of the Navy, or any of its officials or employees, with respect to her employment up to the date of the execution of this agreement under either Federal or State statute, or the Constitution of the United States, or of a State, in either a Federal or State Court or administrative or negotiated form.

(*Id.* at 33–34.)

Plaintiff contends that the settlement agreement is limited to claims surrounding her grievances arising out of her time in Albany, Georgia and not her tour in Japan. (Doc. No. 54 at 18.) She argues the agreement is not a general release but is narrowly related "to the specific grievances referenced in it." (*Id.*) She points to the last paragraph in the agreement as evidence of the parties' intent to limit the scope of the agreement, which states: "The Employee also agrees that this agreement settles all issues concerning the two-filed grievances [which arose from Albany, Georgia and not Japan]." (Doc. No. 48-2 at 24.) Additionally, Plaintiff argues the agreement did not mention any of her EEOC complaints she filed regarding her time in Japan or required her to withdraw them, as it

3

required her to withdraw grievances regarding the Georgia incidents. (Doc. No. 48-2 at 34.)

Defendant replies, stating that accepting her interpretation of the clause would render the clause directly preceding I.B.3 specious. That clause, I.B.2, says:

> In regards to any matter pertaining to the suspension issued 19 July 2012 or the Letter of Requirement dated 24 May 2012; [Plaintiff] freely and voluntarily withdraws her grievances, waives her right to file a grievance or Unfair Labor Practice; waives her right to file a complaint with the Equal Employment Opportunity Commission; and waives her right to file any complaint with any U.S. District Court of competent jurisdiction.

(Doc. No. 48-2 at 34.) Defendant argues these two sections, when read together, "not only bars Plaintiff from raising claims related to the identified grievances, but also bars Plaintiff from raising *any other* employment claims against the Navy arising prior to October 2012, including the claims Plaintiff asserts here." (Doc. No. 55 at 4 (emphasis in original).)

In California, settlement agreements are interpreted using the principles applicable to contract interpretation. *See Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (1991); *Cacique, Inc. v. Reynaldo's Mexican Food Company, LLC*, No. 2:13–cv–1018–ODW (MLGx), 2014 WL 505178, at *3 (C.D. Cal. Feb. 7, 2017) ("A Settlement Agreement is treated as any other contract for purposes of interpretation.") (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F. 2d 853, 856 (9th Cir. 1992)); *In re Nationwide Beverage Bottling, Inc.*, CV 07-1607 PSG, 2008 WL 4820764, at *2–3 (C.D. Cal. Nov. 3, 2008) (following general rules of contract interpretation to interpret settlement agreement).

In California, one fundamental canon of contract interpretation requires giving effect to the mutual intent of the parties. *See* Cal. Civ. Code § 1636; *see also State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). The intent of the parties should be inferred from the written provisions of the contract and the plain meaning of those provisions. *See* Cal. Civ. Code § 1639; *see also Continental Ins. Co.*, 55 Cal. 4th at 195. If the plain meaning of the contractual language is clear and explicit, it governs. *See* Cal. Civ. Code § 1638; *see also Continental Ins. Co.*, 55 Cal. 4th at 195. The "clear and explicit" meaning of the contractual

4

provisions should be interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *See* Cal. Civ. Code §§ 1638, 1644; *see also Continental Ins.*, 55 Cal. 4th at 195. Courts are not empowered under the "guise of construction or explanation" to depart from the plain meaning of the contract in order to insert a term or limitation not found therein. *See, e.g.*, *Apra v. Aureguy*, 55 Cal. 2d 827, 899 (1961).

Here, the Court disagrees with both parties' interpretation of the contract. The key focus of the Court's analysis is the word "institute," found in section I.B.3 of the settlement agreement. That section states Plaintiff "[w]ill not institute any other actions . . . against the Navy" regarding her pre-2012 employment. (Doc. No. 48-2 at 34 (emphasis added).) While the Court rejects Plaintiff's contention that the agreement should be narrowly construed as to only include the Albany, Georgia related events, the Court also rejects the Navy's position that the agreement prevents her from bringing any other claim. Rather, the Court finds the word "institute" does not prevent her from bringing the claims in her current complaint as these claims are a continuation of her EEOC claims she brought back in 2011, and which were rejected by the EEOC in 2016.

Taking the plain meaning of the word "institute," the Court takes judicial notice of Merriam-Webster's definition, which defines it as "to originate and get established." Merriam-Webster Dict. Online (2018) (https://www.merriam-webster.com/dictionary/institute) (as of Dec. 26, 2018). Here, Plaintiff's EEOC claim regarding her time in Japan originated in 2011 when she filed her administrative claim with the EEOC as a required condition precedent before initiating a suit in federal court. 42 U.S.C. § 2000e-5(e)(1); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) ("Discrimination claims under Title VII ordinarily must be filed with the EEOC within 180 days of the date on which the alleged discriminatory practice occurred.") Thus, her suit here in federal court is merely a continuation of that claim and not a newly instituted action barred by her settlement agreement.

5

## IV. EVIDENTIARY OBJECTIONS

In its reply, the Navy submitted objections to four declarations submitted with Plaintiff's opposition. (Doc. No. 55-1.) However, the Court did not rely on the objected-to paragraphs in its analysis, thus the Court **OVERRULES** Defendant's objections.

## V. CONCLUSION

The Court finds the settlement agreement that Plaintiff and Defendant entered into does not bar Plaintiff from continuing her claims surrounding her employment with the Navy while she was on tour in Japan, which were rejected by the EEOC in 2016 and form the basis of her complaint. Accordingly, the Court **DENIES** Defendant's summary judgment motion. (Doc. No. 48.) The Court **ORDERS** the parties to jointly contact the magistrate judge's chambers within **seven days** from the receipt of this order to reschedule the mandatory settlement conference and pre-trial dates.

**IT IS SO ORDERED.**

Dated: August 1, 2019

Hon. Anthony J. Battaglia
United States District Judge

6